Coustic Technology, Inc. v. Itron Networked Solutions, 19-1059. and the IPRs below should be vacated and remanded based on two issues. One is a procedural issue and one is a substantive issue. The first procedural issue is the time bar. And the time bar was triggered because Itron, which was a time barred party, was a real party in interest before the IPRs were instituted. And that's because before institution it was a clear beneficiary and it had a pre-existing and established relationship with the petitioner. In this case, a little bit unlike, was it CELTA? No, Power Integrations. The agreement to merge as well as the execution of the agreement, so that the closing of the merger, both post-dated the institution? Yes. It's just that there were discussions beforehand. In Power Integrations, the merger was closed four days after institution. Our facts are different because the merger was announced publicly 10 days after institution and they closed the merger during the IPR proceeding. So what we had before institution was the time barred party Itron had approached petitioner to acquire it before the petitions were even filed. And then after the petitions were filed, they negotiated an agreement to acquire petitioner. They completed the due diligence during which they presumably learned about the litigation where these patents were asserted and the IPRs. And then they made the offer to acquire petitioner. And Itron, the time barred party, said it was prepared to close the deal. But then there was a delay a few weeks during which the board instituted IPR proceedings and then they publicly announced 10 days later that Itron was acquiring petitioner. So on that sequence of events, obviously there's a quite large sort of threshold question of whether this was all waived because you did not present it to the board. Why is this not a good situation for finding waiver? Because a time bar challenge to the board's jurisdiction is a jurisdictional challenge and is not waivable. What authority is there for taking the idea of non-waivability of federal court jurisdiction and transposing it into the agency realm where even if one calls the time bar question a waiver of agency jurisdiction? Well, we do have a number of decisions from this court that have characterized the time bar as jurisdictional. But the waiver is... I mean, as you know and as the Supreme Court has said, that word has been quite profligate in its use over time. And also, as you know, the Supreme Court's decision in the city of Arlington said we're not really going to make distinctions between aspects of the agency's authority that are jurisdictional and aspects that are not. So the issue that we have here is whether the time bar argument is waivable. City of Arlington did not address that issue. It was concerned with a different issue, which is whether an agency's interpretation of its own jurisdiction should be given Chevron deference. And we don't have any Chevron deference issues here because the board never considered the time bar and never interpreted it in this appeal. There's only one case that I'm aware of in this circuit where this issue of waivability of a jurisdictional bar by the board has come up, and that's this court's decision in GTNX. And in that case, they did not look at the section 315 time bar. They were looking at the analog to that, which is the section 325 civil action bar, which uses very similar statutory language. That's the one in which the board, after institution, looked at some papers and realized that there was probably a problem here, and then, roughly speaking, called in the parties and said to the patent owner, we invite a request for reconsideration of our institution decision. Correct. And so the allegation or the argument in GTNX was that the civil action bar had been raised untimely. And this court found that the civil action bar was jurisdictional and therefore not waivable and did not apply the doctrine of waiver. And so based on this decision in GTNX, the same rule should apply here for the section 315 time bar. And that argument is not waivable and may be considered by this court on appeal. So is it your argument that you can bring up a 315B time bar challenge at any time during the IPR? Yes. Doesn't that run contrary to the language of the statute itself? Well, the board may consider whether there is a time bar issue at any time because the institution decision at any time. But what the statute requires is that when the IPR is instituted, in its institution decision, you must consider the time bar. So the only requirement is to consider it at institution, but of course, often the board revisits their institution decisions during the proceeding. But under your argument, you don't have to bring it up at all. You can just bring it up on appeal and say it's jurisdictional. That's correct. Because it's not waivable. It can be brought up for the first time on appeal. And here... That sure would do away with administrative exhaustion principles on all these kinds of issues, wouldn't it? Well, we have an interesting scenario here because we have a time bar party that's showing up pre-institution, and when they showed up pre-institution and were actively attempting to purchase the petitioner, the only parties that were aware of this were petitioner and ITRON. And it was not publicly announced until 10 days after institution. So, you know, in this case, there's very good grounds for the board to have considered it even after institution because no one was aware of it. So you believe 315B time bar applies when there's negotiations for a merger? There wasn't just a negotiation for a merger. Pre-institution, ITRON had made the offer that was later accepted 10 days later to acquire them and said, we're ready to close this deal. So the deal was all done except they had to sign the paperwork and do it. So they had a deal. And that was all done pre-institution. Why didn't you bring that up to the attention of the agency? I do not know why it was not brought up below. If the parties don't bring it up and they know about it, why should the PTAB be held accountable to do this on their own? Well, the only party that was aware pre-institution that this merger was in the works and actually had an affirmative obligation to inform the board through its mandatory disclosures was the petitioner. And they never disclosed it. They never even disclosed it later after the merger was done. And to this day, we have no explanation why they didn't. Suppose you don't have negotiations. All you have is a letter of intent or an MOU. Is that enough to institute the time bar? Well, you have, in this case, we have an actual deal and offer that was accepted. No, I'm not talking about this case. I'm giving you a hypothetical. Suppose that you don't have negotiations or even an announcement. All you have is a letter from one company to another one that says something like, let's meet next Wednesday, have lunch, and discuss potential merger. Is that enough? I think it depends on the facts and circumstances, but in this case, we have much more happened. They had gone through the process. They'd completed due diligence. They had a deal. The deal was on the table, and that was the same deal that was accepted after institution. And there was a gap there. So, you know, the deal was done. Like, ITRON had an interest. They were a clear beneficiary, and they had a relationship because they were plotting to acquire the petitioner. Can I ask you to make your argument on the merits? Yes. So, in addition to this procedural issue on the time bar, there's also a separate substantive issue, which is the claim construction error. The claims 3, 16, 17, and 20 all require a means plus function limitation, wide area network means, which is referred to as WAN means in the claim. And it's undisputed this is a means plus function limitation, and therefore, it needs to be construed according to the statute, 112 paragraph 6, which requires the court to identify the function and the corresponding structure in the specification. And here, the board didn't do this. Instead, in the final written decision, they applied the Phillips standard and never identified the corresponding structure. And the only corresponding structure explicitly linked to that function in the specification was a conventional WAN radio. Did the board not make sufficient findings that even accepting that a conventional WAN radio, because you don't make the argument anymore about WAN on a public network, which you did below, but you are not making it here. Why aren't the findings sufficient to support the finding, I guess, the conclusion that there is such a thing taught in the prior art? Well, they made no finding that there was a conventional WAN radio in the prior art, and Petitioner concedes it never even identified conventional WAN radios in the prior art below to the board. And we have two different IPRs here. There's the IPR with the Mayo and Roche prior art ground. Petitioner's not even disputing on appeal that that prior art includes a conventional WAN radio. So that certainly should be reversed. And on the other, which is the Argerudas, again, there was no finding. It was never identified. So there's no factual finding that could support the board's unpatentability finding. I'm into my rebuttal unless you have additional questions. No. Thank you. Thank you. Thank you. May it please the court. ATI's two arguments on both the time bar and on the merits of the board's obvious misdetermination were both waived. They weren't raised in the proceedings below. The allegations that Petitioner and Silver Spring at the time, now ITRON Network Solutions, Inc., concealed the merger is contradicted by the additional materials that ATI submitted into the record on appeal, which shows that ATI counsel was apprised of the merger. It knew about the merger. And, in fact, INSI, or ITRON Network Solutions, Inc., argued to the district court that as a result of the merger, it became a licensee. The plan of merger and the agreement that was signed a few days after institution was publicly announced via press release. You must admit it looks kind of suspicious for the merger to occur in the way it was announced right after the institution. And, obviously, it seems to me that if you're going to have a merger of this size, that you're going to be involved in negotiations leading up to that time before you can make an announcement. Well, certainly there were negotiations leading up to that point in time. But as we set forth in our briefing, there were negotiations going on with 22 other companies. They're anonymized in the 14A disclosures, which we cited to. But it wasn't as if ITRON, Inc. and Silver Spring at the time had a preexisting relationship like we see in the Cisco case, or that it had already been acquired and the merger had closed prior to institution as we saw in the power integrations case. In fact, Silver Spring and ITRON, Inc. at the time were competitors. If we were to adopt a position, wouldn't we be leaving the door open to having companies just wait on an announcement or wait on a merger until hours or days after institution? I don't think that's particularly likely, Your Honor. I think, one, is that the sort of size of a litigation that a company would be likely to rely on in timing their merger is not likely to be a frequent occurrence. And moreover, deciding the case on these facts, the negotiations aren't the type that would give rise to a real party in interest. We're not saying, and our argument isn't, that you have to have a closed merger for a party to become a real party in interest or be in privity with another party. It's the circumstances, it's the totality of the factual arguments in the RPI determination under applications in time. And given the facts of this case, there just isn't any evidence of a real party in interest being created at any point prior to, at the earliest, January 5, 2018, when the merger actually closed. As I mentioned, at the time, in the interim between the- Does the merger have to close in order for 315B to apply? Not necessarily. So there can be a letter of intent? Would that do it? It depends on the circumstances and the relationships. It's hard to answer the hypothetical without the complete set of facts. But here, in the specific facts of this case, one that's particularly important is the relationship between the parties during these negotiations. They're represented by separate counsel. They set up clean room procedures, and I can direct your honors to Appendix 6996 and 6997, which is one of the new materials introduced on appeal, where the parties had clean room procedures such that if the merger didn't close, it wouldn't put either company at a competitive disadvantage. And so that highlights that these are not companies that were informally cozy with one another prior to the merger or prior to the letter of intent or the agreement and plan of merger, which was executed and signed on September 17. These were competitors which, if the agreement did not close, if the merger did not close on January 5, 2018, then, in fact, ITRON, Inc. had an interest in Silver Spring not prevailing in the IPRs and losing those IPRs because ITRON, Inc. already had a license. It doesn't need to prevail in the IPRs for ITRON, Inc. It would prefer that its competitors be subjected to the patents and be sued on them because it's already clear and free. And so under the facts of this case, the closing of the merger is important, given the lack of any aligned interests prior to the closing of the merger. You want to address the merits? Yes. On the WAN means argument, as was alluded to earlier, the focus in briefing below was on the notion of the WAN means having to communicate over a public network. Focus, I think, is probably a pretty good word, but I'm not sure that a dropping of the focus is a waiver of the, I don't know, the unfocused but nevertheless present second piece of the proposed construction. I would agree with Your Honor that ordinarily it might not be. In re Watts, which appellants cite, does say that changes in claim scope, which this is, it actually broadens the claim. Claim term can give rise to waiver. But you're absolutely correct that we were on notice about the argument about conventional WAN radios. But we heard some criticism that we didn't make an argument about the Argriotas grounds that it disclosed a conventional WAN radio, that the wireless remote metering unit, the WRMU, is a conventional WAN radio, and that the board didn't make any factual findings about that. And that's because in the proceedings below, appellants didn't make any distinction over the prior art based on that element. The argument with respect to Argriotas below, and why it purportedly did not render this claim element obvious, was that it didn't communicate over a public WAN. And so there wasn't an allegation below by the patent owner that a conventional WAN radio was not disclosed in Argriotas in the form of the WRMU. Just to be clear, because appeal is limited to claims 3, 16, 17, and 20, if those are invalid under Argriotas, it doesn't matter what happens in the Roche IPR? That's correct. Okay. That would be dispositive of the issue. And we put forth in our... There was only one claim different, 23, I think. That's claim 3 is actually raised in the Argriotas grounds that's not raised in Nelson. So it's a broader set of claims in Argriotas. So it would dispose of all the claims in the 1060 appeal dealing with the Nelson. Or I'm sorry, I'm getting confused. Dealing with the Roche grounds. In our opposition brief, we also pointed out that even if the court were to be inclined to adopt the new construction proposed by ATI on appeal, that the evidence still supports affirmance on the record, particularly in view of the fact that it was not argued below that Argriotas was missing this WAN means. And that's in appendix 1152, paragraphs 197 to 202, which correspond to our expert Dr. Solomon's opinions talking about the WRMU described in Argriotas, talking about how it uses CDMA communication, communicating over existing cell phone infrastructure or cell towers. And this corresponds to the conventional CDMA type WAN radio described in the patent at appendix 207, column 5, lines 5 to 15. This also aligns with ATI's description of what a conventional WAN radio is, which is a bit unclear from the briefing. But one thing we know is that from appendix 558, they're radios that communicate over cell towers, existing cellular infrastructure. That's exactly what Dr. Solomon, behind the WRMU and Argriotas, does. And therefore, affirmance, even if you get past the waiver point, even if you adopt ATI's construction on appeal, then affirmance is warranted. I will say that I don't think you should get to the point of adopting ATI's construction on appeal, even if you move past waiver, because I think if you read the board's decision, it's clear that they did, in fact, adopt our proposed construction as a means plus function term, where they said the function is transmitting and the structure is transmitted. It is a structure that derives its name from the function that it performs, but there's nothing wrong with that under this court's precedent. The board, in rendering its decision, started out by articulating petitioner's argument, then patent owner's argument, and then it rejected patent owner's argument that it was limited to a public WAN or that the only type of structure that could satisfy the WAN means limitation was a conventional WAN radio. It's certainly one type of structure that can do it, but the specification itself refers to a WAN means such as a conventional WAN radio. Elsewhere, the function of transmitting is aligned with a conventional transmitter, and as a result, the board was just saying, we're rejecting patent owner's argument, it's not limited to a public WAN, it's not limited to a conventional WAN radio. The PTAB didn't suggest that it was departing from its construction in the institution decision after ATI didn't challenge the initial construction put forth by Silver Spring, the petitioner. It didn't suggest that it was not construing the term as means plus function, and it didn't suggest that there was anything different about the construction that it applied previously in granting institution. Unless your honors have further questions. Thank you for your time. Thank you. You have a little bit over four minutes of time left. Thank you, your honor. Just a few points. First on the time bar, petitioner has argued that there was no deal. If you look at appendix 6565, the August 28, 2017 entry, that is where ITRON made the offer that was accepted of $16.25 per share for ITRON, and that was done a few weeks before institution. I'm sorry, what was done? The making of the offer or the acceptance? They made the offer before institution. I guess I wouldn't tend to say that there was a deal until the offer had been accepted. Well, and then there is this delay, and then right 10 days after institution, petitioner accepted that offer at $16.25 per share, and that is in their press release at appendix 68880. So there was an offer, and all they did was wait until after and ink the deal. So during petitioner's argument, they made representations about the status of the relationship between petitioner and ITRON pre-institution. We have been afforded no discovery, and we don't actually know what the relationship was. We're just learning things from their SEC filings and from what they told the district court. So this case should go back for the board to take a full analysis and get all of the facts about exactly what the relationship was between petitioner and the time-barred party ITRON to determine whether there is a time-bar issue here. Are you asking us to go outside the record and to use information developed several weeks ago to analyze whether the time-bar existed back in the petitioner file? I am not asking this court to make that decision. I'm asking this court to remand back to the board to do the analysis, and we have enough information just from petitioner's admissions and its briefing. These facts are not disputed. There appears to be a time-bar problem. This case should go back for the board to determine whether it's time-barred. And counsel also argued that it had no interest in having petitioner actually succeed, because they were already licensed. Once they had made that offer and indicated they wanted to close the deal, of course they had an interest in seeing petitioner succeed, because that would impact the value of the company that they were trying to buy. Turning to the claim construction argument, that argument was not waived. As counsel acknowledged, they were aware of that argument. It was presented in our patent owner response at Appendix 493. They also said that one means findings should be affirmed on these new grounds and these new arguments that they're making for the first time on appeal. This court cannot do that under the Administrative Procedures Act, because judicial review is confined to the four corners of the board's decision, and the board did not make any determination that Argerudas disclosed a conventional on radio, and authority for that is in Power Integrations v. Lee. Can I ask you this quick question? My recollection is that you did not really present to the board specific factual contentions that the radio that was in Argeardas was unconventional, apart from it didn't work on a public network. So why would we fault the board for not saying more when you didn't give it anything to respond to on this specific point about conventional? It's petitioner's burden to show unpatentability, and they never identified a conventional radio in Argerudas. And the only excerpt that the board relied on to show unpatentability is this one section in Column 3 of Argerudas that has no disclosure of hardware. So, I mean, there's just nothing there to find that there's a conventional on radio in Argerudas. Okay, you're out of time. Thank you.